OPINION. Hill, Judge: The only issue in this proceeding is whether the respondent has correctly determined that J. A. Riggs Tractor Co. was operated in such form and manner during the taxable years as to constitute it an association taxable as a corporation within the meaning of section 3797 of the Internal Revenue Code. Both parties concede that the tests for determining whether or not petitioner is so taxable are to be found in the Supreme Court decision in Morrissey v. Commissioner, 296 U. S. 344, and the companion cases decided the same day. The problem is to determine whether or not the criteria therein enunciated are present under the facts here. The answer must be found in an examination of all material facts. Respondent insists that petitioner comes within the ambit of the Morrissey case. Petitioner contends contra. Respondent points to several features in connection with the petitioner’s methods of operation and form of organization which he says bring petitioner within his regulations defining associations.[1] He claims that the trustees of the various trusts created by Riggs, Sr., are a continuing body and that under paragraph 6 of the partnership agreement there is centralized management. He further contends that the only reasonable construction of paragraph 8 of the partnership agreement would indicate that the parties intended to provide for a continuing of the partnership as an entity in the event of the death or withdrawal of a partner. He argues that the restriction on the transfer of a partnership interest is similar to the restrictive agreements covering corporate stock in small closely held corporations and is in no way indicative of partnership intent. Likewise he points to paragraph 5 as evidencing the intention of the parties to confine their liability for business losses to the extent of their interests in the business. Petitioner contends that in all respects it is a valid partnership and that the respondent has drawn unreasonable inferences from the foregoing provisions of the partnership agreement, which it contends are ordinary and customary in partnership arrangements. Petitioner insists that éach of them may be found in parallel cases where the respondent’s determination of association status has been reversed, citing Chilhowee Mills, 47 B. T. A. 682; George Bros. & Co., 41 B. T. A. 287; Glensder Textile Co., 46 B. T. A. 176, and. other cases. As we understand the argument of the respondent, his chief concern seems to be over the fact that the partnership agreement provides that the management of the business shall be vested in Riggs, Sr., and Riggs, Jr., and in the event of a conflict over decisions to be made or business policy to be adopted, the decision of Riggs, Sr., shall control. His second major contention is based upon paragraph 8 of the partnership agreement, providing that business shall be continued in the event of the death or withdrawal of a partner. Because Riggs, Jr., was absent in military service, his father was the only partner to testify. His statements, which were not contradicted, were to the effect that at all times he and his son intended to form a partnership. Their business arrangements at the time the organization commenced operations in 1937 and when the new firm was organized in 1938 appear to be in keeping with this intention. No certificates of ownership or beneficial interest were issued. The only written evidences of ownership were to be found in the partnership agreement, in the partnership books, and in the certificate subsequently filed with the Secretary of State of Arkansas. Petitioner’s books were prepared and kept in accordance with recognized rules of partnership accounting. They had none of the accounts peculiar to corporation accounting methods. Customers and all other business connections, including the bank in which petitioner kept its funds, regarded petitioner as a partnership. The signature cards used when the bank account was opened were those used for partnerships and individuals. The bank required corporate resolutions authorizing the withdrawal of corporate funds, but no such requirement was here imposed. The evidence here shows that the partners took an active part in the conduct of the business; that they had an equal voice in its management and operations. Their voice in the management was not computed according to the size of their respective partnership interests. The fact that Riggs, Sr., was given a controlling vote in the event of a disagreement between the partners or a difference in opinion as to a policy to be adopted does not alter the case. It is not uncommon for a partnership to have a managing partner. Cf. George Bros. & Co., supra. Certainly, that part of the partnership agreement giving Riggs, Sr., this veto power is not so rare a provision in partnership agreements as to require our holding that this enterprise was more than an ordinary partnership. It is not an uncommon feature in partnership agreements. We are unable to discern any real distinction between the management and control of petitioner’s business and the management and control of the business of ordinary partnerships. We are satisfied that the operations and business conduct of petitioner more closely resemble the operations of an ordinary partnership than the operations of a corporation. Nor are we convinced by respondent’s argument concerning the pledge contained in paragraph 8 of the partnership agreement that the business would be continued in the event of the death or withdrawal of a partner. As we read that paragraph, it merely provides that in such event the business will not be liquidated, but will be continued under the management and control of the surviving or remaining partners. It was stipulated that one of the surviving partners- would be appointed to represent the interests of the deceased or withdrawn partner until such time as a settlement of that partner’s interest could be arranged. That feature is not a rarity in partnership arrangements. See, Glensder Textile Co., supra., at page 185. We are not convinced that that provision of the partnership agreement calls for that continuity of an enterprise which is one of the essentials to our holding that petitioner is an association taxable as a corporation. We think another important factor is the effort on the part of the parties to select their business associates as evidenced by the restraint of the sale or disposition of the partners’ interests. New partners could enter the firm only with the consent of all of the other partners. In view of the agency relationship existing between the partners, both by virtue of the partnership agreement and the law of the state, that element is persuasive and tends to substantiate the claim of the partners that they intended .to form an ordinary partnership for the conduct of its business. The contention of the respondent that paragraph 5 of the partnership agreement is an attempt to limit the liability of the partners for business losses must likewise be rejected. We can not see any real distinction between that provision and the provision found in the partnership agreement construed in George Bros. & Co., supra, where we held that organization to be a bona fide partnership. Such a provision merely determines how the liabilities, profits, and losses shall be divided among the partners. Obviously, it could have no effect on third persons not a party to the agreement. From an examination of the entire record, we are satisfied that the instant case is indistinguishable from George Bros. & Co., supra. If anything, petitioner’s case is the stronger. We have found that the operations of petitioner more closely resemble the operations of a partnership than an association or corporation. It follows that respondent erred in determining that petitioner was an association taxable as a corporation. Reviewed by the Court. Decision will be entered for the petitioner. Secs. 19.3797-1, 19.3797-2, and 19.3797-4, Regulations 103.